# IN THE INTERMEDIATE COURT OF APPEALS OF WEST VIRGINIA

**FILED**

**November 18, 2022**

EDYTHE NASH GAISER, CLERK
INTERMEDIATE COURT OF APPEALS
OF WEST VIRGINIA

**JOHN JUSZCZAK,**
**Claimant Below, Petitioner**

**vs.)**   **No. 22-ICA-8**      (JCN: 2021004229)

**ROB JUSZCZAK CONSTRUCTION,**
**Employer Below, Respondent**


## MEMORANDUM DECISION

Petitioner John Juszczak appeals the July 12, 2022, order of the Workers' Compensation Office of Judges ("OOJ"). Respondent Rob Juszczak Construction filed a timely response.[1] Petitioner did not file a reply brief. The issue on appeal is whether the OOJ erred in affirming the claim administrator's order denying the addition of brachial plexus disorder as a compensable diagnosis and denying authorization for a cervical epidural at C7/T1.

This Court has jurisdiction over this appeal pursuant to West Virginia Code § 51-11-4 (2022). After considering the parties' arguments, the record on appeal, and the applicable law, this Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the OOJ's order is appropriate under Rule 21 of the Rules of Appellate Procedure.

Petitioner was injured on January 13, 2020, while working for Rob Juszczak Construction. Petitioner was fueling an excavator from a gas tank in the back of his truck when the excavator swung and hit petitioner, throwing him onto the ground. Petitioner was life-flighted to a hospital and suffered fractures to nine ribs. On July 16, 2021, the claim administrator held the claim compensable for multiple rib fractures.

Petitioner was seen by Frank N. Grisafi, M.D., on April 14, 2020. Petitioner complained of pain in his right shoulder that sometimes radiated down his arm and constant numbness and tingling in the ulnar digits of his right hand. Dr. Grisafi reviewed a cervical MRI obtained after the injury and found that petitioner had central canal stenosis at C4-5, broad-based disc bulging causing central stenosis at C5-6, and right and left cervical radiculopathy at C6, C7, C8, and T1. Dr. Grisafi opined that petitioner's shoulder pain likely originated from the brachial plexus rather than the cervical spine. Dr. Grisafi also

---

[1] Petitioner is represented by M. Jane Glauser, Esq. Respondent is represented by Jeffrey B. Brannon, Esq.

1

reviewed an EMG/NCV obtained after petitioner's injury and found that petitioner had bilateral carpal tunnel syndrome, bilateral cubital tunnel syndrome, and right and left cervical radiculopathy at C6, C7, C8, and T1. Dr. Grisafi opined that petitioner had C8 and T1 nerve irritation around the area of the posterior rib fractures and that petitioner's symptoms were likely related to his work injury.

Petitioner was seen by Leslie J. Schwendeman, M.D., on May 14, 2020. Dr. Schwendeman performed a physical examination of petitioner and reviewed the EMG/NCV obtained by Dr. Grisafi and found evidence of brachial plexopathy, bilateral carpal tunnel disorder, and bilateral cubital tunnel disorder.

Petitioner began seeing Robert A. Kaufman, M.D., on April 20, 2021. Dr. Kaufman found that petitioner had bilateral carpal tunnel syndrome and bilateral cubital tunnel syndrome. Dr. Kaufman recommended an EMG/NCS to determine the cause of petitioner's ulnar nerve issues, which petitioner subsequently underwent in September of 2021. Dr. Kaufman reviewed the September 2021 EMG/NCS and found bilateral ulnar mononeuropathy but no evidence of thoracic outlet or brachial plexus lesion. Dr. Kaufman stated that it was "quite likely" that petitioner's work injury caused the bilateral carpel tunnel syndrome and bilateral cubital tunnel syndrome.

The September 2021 EMG/NCS was also reviewed by a radiologist, Karen Barr, M.D., who found no evidence of cervical radiculopathy at C6, C7, C8, and T1.

Chaun Fang Jin, M.D., performed an independent medical examination ("IME") on petitioner at the request of respondent on May 20, 2021. Dr. Jin originally believed petitioner to have thoracic outlet syndrome and preexisting cervical spine degenerative arthrosis. Dr. Jin found no evidence of ulnar neuropathy but instead found median neuropathy. Dr. Jin recommended a neurological or orthopedic consultation to determine petitioner's diagnoses.

On August 2, 2021, the claim administrator denied the addition of bilateral carpal tunnel syndrome, bilateral cubital tunnel syndrome, and brachial plexus disorder as compensable diagnoses. Petitioner protested this order.

On December 14, 2021, Dr. Kaufman completed a Diagnosis Update form requesting that the diagnoses of bilateral carpel tunnel syndrome and bilateral cubital tunnel syndrome be added to petitioner's claim as compensable diagnoses. On January 5, 2022, the claim administrator denied authorization for surgery for bilateral carpal tunnel syndrome and bilateral cubital tunnel syndrome, concluding that those diagnoses were non-compensable. Petitioner protested this order.

Dr. Jin submitted a supplemental report on January 27, 2022, after reviewing an EMG study from September 2021. In this report, Dr. Jin stated that there was no evidence

of thoracic outlet syndrome. Dr. Jin did find evidence of bilateral ulnar neuropathy. Dr. Jin opined that petitioner's bilateral carpal tunnel syndrome and bilateral cubital tunnel syndrome had not been caused by petitioner's work injury. Dr. Jin found no evidence of cervical radiculopathy at C6, C7, C8, and T1 on the September 2021 EMG/NCS.

Petitioner was seen by Michael J. Singh, M.D. on February 28, 2022, for evaluation of possible thoracic outlet syndrome. Dr. Singh found no evidence of thoracic outlet syndrome and rather diagnosed petitioner with neuralgia. Dr. Singh recommended physical therapy and a neurology consultation for petitioner.

The OOJ combined and considered petitioner's protests of several claim administrator decisions. Among other rulings in its July 12, 2022, order, the OOJ affirmed the denial of the addition of brachial plexus disorder as a compensable diagnosis and affirmed the denial of authorization for a cervical epidural at C7-T1. Petitioner now appeals those rulings.[2]

Our standard of review is set forth in West Virginia Code § 23-5-12a(b) (2022), in part, as follows:

> The Intermediate Court of Appeals may affirm the order or decision of the Workers' Compensation Board of Review or remand the case for further proceedings. It shall reverse, vacate, or modify the order or decision of the Workers' Compensation Board of Review, if the substantial rights of the petitioner or petitioners have been prejudiced because the Board of Review's findings are:
> (1) In violation of statutory provisions;
> (2) In excess of the statutory authority or jurisdiction of the Board of Review;
> (3) Made upon unlawful procedures;
> (4) Affected by other error of law;
> (5) Clearly wrong in view of the reliable, probative, and substantial evidence on the whole record; or
> (6) Arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion.

Although this statute specifically references orders of the Board of Review ("Board"), this Court concludes that the same standard applies to our review of orders issued by the OOJ during the period of time when administrative proceedings were being transferred from the OOJ to the Board. *See* W. Va. Code § 23-5-8a (2022) (transferring powers and duties of OOJ to Board); W. Va. Code § 23-5-12(b) (2021) (specifying this same standard of review when Board heard appeals of OOJ's orders).

---

[2] Other aspects of the OOJ's order are subject to a separate appeal by the employer in *Rob Juszczak Construction v. John Juszczak*, ICA Docket No. 22-ICA-29.

On appeal, petitioner argues that the OOJ erred in denying the addition of brachial plexus disorder to the claim. According to petitioner, multiple physicians agreed with the diagnosis of brachial plexus disorder. As such, he avers they should have been added as compensable conditions in the claim. Petitioner further argues that his preexisting cervical spine issues were aggravated or worsened by his work injury and, thus, the treatment of a cervical epidural for C7-T1 should have been authorized.

While petitioner is correct that several physicians initially considered brachial plexus disorder to possibly be one of the causes of petitioner's symptoms, petitioner fails to account for the fact when petitioner underwent testing no evidence of brachial plexus disorder was found. The OOJ consistently determined that the report of Dr. Kaufman, who found no evidence of a brachial plexus disorder, was the most credible, reliable, and constituted a preponderance of the evidence due to his reliance on the most recent EMG/NCS on record and the fact that his findings were, generally, supported by the findings of Dr. Grisafi. The OOJ found that Dr. Kaufman was correct in his findings that there was no evidence petitioner suffers from brachial plexus disorder.

Moreover, while there is evidence of petitioner suffering from some cervical spine issues, petitioner seeks treatment for the area of C7-T1 where no evidence of radiculopathy has been found. Radiologist Dr. Barr opined that the September 2021 EMG/ NCS showed no evidence of cervical radiculopathy at C7-T1. Accordingly, the OOJ did not err in finding that petitioner had provided insufficient evidence to prove the existence of cervical radiculopathy at C8 and T1. Further, no cervical spine diagnoses have been added to this claim as compensable conditions.

After considering the record, we find that the OOJ was not clearly wrong in finding that petitioner failed to prove he suffers from a brachial plexus disorder or from cervical radiculopathy at the C7, C8, and T1 level. Accordingly, the OOJ did not err in denying the addition of brachial plexus disorder as a compensable diagnosis in the claim, and the OOJ did not err in denying the authorization of the cervical epidural at C7-T1.

Accordingly, we affirm.

Affirmed.

**ISSUED:** November 18, 2022

**CONCURRED IN BY:**

Chief Judge Daniel W. Greear
Judge Thomas E. Scarr
Judge Charles O. Lorensen

4